UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
RAYMOND TIRONE, on behalf of  :
himself and as a representative of a class :
of persons similarly situated, :          05 Civ. 8703 (WHP)
                              :
            Plaintiffs,       :           MEMORANDUM AND ORDER
                              :
      -against-               :
                              :
NEW YORK STOCK                :
EXCHANGE, INC., et al.,       :
                              :
            Defendants.       :
------------------------------X

WILLIAM H. PAULEY III, District Judge:

    Plaintiff Raymond Tirone ("Tirone") brings this putative class action against Defendant Welfare Benefit Plan of the New York Stock Exchange (the "Plan") pursuant to § 502 of the Employee Retirement and Income Security Act of 1974, as amended ("ERISA"), codified at 29 U.S.C. § 1132.[1] Plaintiffs, disabled former Exchange employees whose health care benefits were terminated by Defendants, seek recovery of unpaid benefits and reinstatement as eligible beneficiaries under the Plan. Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Tirone moves for summary judgment under Federal Rule of Civil Procedure 56(c). For the following reasons, Defendants' motion is denied, and Tirone's motion is granted in part and denied in part.

---

[1] The Second Amended Consolidated Complaint, dated Oct. 26, 2006 ("Complaint" or "Compl.") purports to bring this claim against Defendant New York Stock Exchange, Inc. (the "Exchange") as well, but, as Defendants note, a § 502 claim is properly brought against only the Plan, not the Exchange, Tirone's former employer and sponsor of the Plan. See, e.g., Crocco v. Xerox Corp., 137 F.3d 105, 107-08 (2d Cir. 1998). Plaintiff does not dispute this assertion.

BACKGROUND

The Exchange sponsors the Plan which provides, inter alia, healthcare benefits for managerial and professional employees. (Compl. ¶ 3; MacDermeid Decl. I, Exs. A: United Healthcare Select Group Policy for New York Stock Exchange & B: United Healthcare Select Certificate of Coverage for New York Stock Exchange.) The Exchange also provides a Summary Plan Description ("SPD") that purports to summarize the Plan's terms. (First Declaration of Alice M. MacDermeid, dated Feb. 14, 2006 ("MacDermeid Decl. I"), Exs. E1: SPD—General Information & E2: SPD—Health Care.)

Tirone worked at the Exchange from 1969 until 1990, serving as a Senior Trading Investigator and Market Surveillant during the final six years of that period. (Compl. ¶¶ 14, 21, 31.) In early 1990, Tirone commenced a medical leave of absence after he began experiencing seizures. (Compl. ¶ 31.) When the Exchange determined that Tirone could not return to work, it classified him as "totally disabled" pursuant to the Plan. (Compl. ¶¶ 34-35.) Until March 31, 2005, Tirone participated in, inter alia, the Select Plus HMO provided by United Health Care. (MacDermeid Decl. I, Exs. A-B.)

An "Eligible Person" under the Plan is "(1) an employee of the Enrolling Group; or (2) [an]other person who meets the eligibility requirements specified in both the application and the Policy; and (3) who resides and/or is employed within the Service Area." (MacDermeid Decl. I, Ex. B at 10.) Coverage terminates on "[t]he date your residence and employment are no longer in the Service Area." (MacDermeid Decl. I, Ex. B at 15.) The Plan excludes from coverage "[f]ull-time employees working less than 35 hours per week; Part-time employees; [and] Intermittent Employees." (MacDermeid Decl. I, Ex. A at 8.)

Under the heading "When Coverage Stops," the SPD explains that "[y]ou, or covered family members, can lose your health coverage if[] [y]ou terminate your employment." (MacDermeid Decl. I, Ex. E(2) at 10.) The SPD further explains: "You are not eligible if you are [not] designated by the Exchange . . . as an employee." (MacDermeid Decl. I, Ex. E(2) at 3.) Finally, it states: "[Y]ou . . . are eligible to receive unlimited lifetime benefits while employed at the Exchange." (MacDermeid Decl. I, Ex. E(2) at 5.)

The Plan is silent regarding benefits for employees on long-term disability. If a totally disabled employee is terminated, however, it provides for "[a] temporary extension of benefits, only for treatment of the condition causing Total Disability" until "(a) the date the Total Disability ceases; . . . or (c) 12 months from the date Coverage under the Policy would otherwise have terminated." (MacDermeid Decl. I, Ex. B at 16.) Under the subheading "When Coverage Stops," the SPD similarly provides that on termination, "if you or your family members are totally disabled, benefits will continue to be paid only for the disabling condition until recovery, up to 12 months." (MacDermeid Decl. I, Ex. E(2) at 10.) The SPD also contains the following language concerning health care benefits for totally disabled employees: "Heath care benefits continue for you and eligible family members for as long as you are totally disabled on the same terms and conditions, as the Employee Benefits Plans Committee (or its delegates) determines according to the terms of the plan." (MacDermeid Decl. I, Ex. E(2) at 9.) For employees "not actively at work because of an approved leave of absence . . . coverage continues for the duration of the leave on the same terms and conditions." (MacDermeid Decl. I, Ex. E(2) at 9.)

Finally, the SPD contains the following provision regarding amendments to the Plan:

> The Exchange intends to continue the plans, but the Board of
> Directors of the Exchange reserves the right, in its sole and

3

> absolute discretion, to amend, modify or terminate any and all
> provisions of the plans (including any related documents or
> policies), in whole or in part, at any time and for any reason . . .
> including . . . changing the eligibility rules [and] eliminating
> particular types of benefits . . . .

(MacDermeid Decl. I, Ex. E(1) at 3-4.)

Effective January 1, 2005, Defendants adopted a purported leave of absence policy (the "Leave of Absence Policy" or the "Policy") pursuant to which the employment status of an individual on medical leave is discontinued if the individual cannot resume work within two years of commencing the leave. (Compl. ¶ 57.) The Exchange's Board of Directors (the "Board") did not formally adopt the Leave of Absence Policy as an amendment to the Plan. (Compl. ¶ 60.) The Leave of Absence Policy was "incorporated into the Plan" on promulgation. (Compl. ¶ 60.)

By letter dated March 15, 2005, Tirone was notified that his benefits would cease effective March 31, 2005. (Compl. ¶ 50.) By letters dated August 18 and September 29, 2005, Tirone purportedly appealed the cancellation of his benefits to the Employee Benefits Plan Committee (the "EBPC"), which on November 30, 2005 denied his claim for reinstatement of healthcare benefits. (Compl. ¶¶ 64-75.)

On November 1, 2006, after this Court dismissed Tirone's claims pursuant to § 510 of ERISA, Tirone v. New York Stock Exchange, Inc., No. 05 Civ. 8703 (WHP), 2006 WL 2773862 (S.D.N.Y. Sept. 28, 2006), Tirone filed a Second Amended Consolidated Complaint adding a claim, in the alternative, for severance benefits pursuant to ERISA § 502. Tirone subsequently voluntarily withdrew his claims for both life insurance and severance benefits. (Letter from Peter Eikenberry, dated March 8, 2007 (life insurance benefits); Tirone's

4

Memorandum of Law in Opposition to Defendants' Motion to Dismiss his ERISA §502(a)(1)(B) Claims at 5 (severance benefits).)

DISCUSSION

I. Motion to Dismiss and Summary Judgment Standards

A court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the "jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Magee v. Nassau County Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998); see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003). On a motion to dismiss, a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). A court should not dismiss a complaint for failure to state a claim unless the complaint fails to include "plausible grounds" for relief. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his] claim]"). Dismissal is proper where a plaintiff fails to plead the basic elements of a cause of action. See Wright v. Giuliani, No. 99 Civ. 10091 (WHP), 2000 WL 777940, at *4 (S.D.N.Y. June 14, 2000). The issue on a motion to dismiss "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support [his] claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted).

On a motion to dismiss, a court's "consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to such matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Such documents are deemed part of the complaint. Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). A court may also consider "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Tirone's motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255.

II. Standing

Section 502 of ERISA provides, in relevant part: "A civil action may be brought by a participant . . . to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The term "participant" includes "any . . . former employee . . . who is or may become eligible to receive a benefit of any type

from an employee benefit plan[.]" 29 U.S.C. § 1002(7); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (defining "participant" to include former employees who have "a colorable claim" to vested benefits) (quoting Saladino v. I.L.G.W.U. Nat'l Retirement Fund, 754 F.2d 473, 476 (2d Cir. 1985)). Defendants assert that Tirone is ineligible for benefits because his "employee" status was terminated pursuant to the Leave of Absence Policy on March 31, 2005 at the latest.[2] Tirone counters that the Leave of Absence Policy is void and, thus, cannot serve as the basis for any termination. Both the Plan and the SPD provide that totally disabled employees are entitled to coverage for medical care relating to their disability for twelve months after termination (the "Limited Extended Benefits").[3] (MacDermeid Decl. I, Ex. B at 16; Ex. E(2) at 10.) Even if Tirone had been terminated by the Leave of Absence Policy on March 31, 2005, his total disability entitled him to benefits when he filed this action fewer than twelve months later in October 2005. Tirone therefore is a "participant" with standing to bring a § 502 claim.

III. EBPC's Denial of Benefits

The parties dispute the standard of review applicable to the EBPC's decision to deny Tirone benefits. Because this Court finds that the EBPC's complete denial of benefits cannot survive review either de novo or under the more deferential arbitrary and capricious standard, it need not address that issue. Though the EBPC correctly determined that Tirone's "employee" status was terminated by the Leave of Absence Policy, its failure to provide Tirone

---

[2] The Leave of Absence Policy terminated Tirone's "employee" status as of January 1, 2005, but Defendants elected to extend it through March 31, 2005. (Compl. ¶ 50.) Defendants note that Tirone's "active employee" status terminated when he went on long-term disability in 1990 but do not base their arguments concerning standing on this distinction.

[3] By Order dated July 5, 2007, this Court requested letter briefs on the impact on the parties' arguments of this language, which neither party cited in its original briefing. The parties submitted letter briefs on July 17, 2007.

with Limited Extended Benefits through March 31, 2006 was contrary to the plain language of the contract.

A. Leave of Absence Policy

The EBPC denied Tirone's appeal for reinstatement of healthcare benefits because Tirone's "employee" status was terminated as of March 31, 2005 pursuant to the Leave of Absence Policy, and, thus, he no longer qualified for healthcare benefits under the Plan. The parties do not dispute that the Policy purported to terminate employees, like Tirone, who have taken a medical leave of absence of more than two years. However, Tirone argues that the Policy is void as an improperly adopted amendment to the Plan.

Section 402(b)(3) of ERISA requires every employee benefit plan to "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). The SPD gives the Board the "sole and absolute discretion" to modify "any and all provisions of the plans (including any related documents or policies)." (MacDermeid Decl. I, Ex. E(1) at 3.) The Board may also "chang[e] the eligibility rules" and "eliminate[e] particular types of benefits." (MacDermeid Decl. I, Ex. E(1) at 3-4.) Tirone asserts, without any legal support, that the Leave of Absence Policy is "related" to "changing eligibility rules or eliminating benefits" and is invalid because it was not adopted by the Board.

Tirone's argument is unavailing. An "employee benefit plan" under ERISA does not, like the Leave of Absence Policy, govern terms of employment or grounds for termination. Rather, it governs the provision of welfare benefits by an employer to its employees. See 29 U.S.C. § 1002(1)-(3). The revision of a personnel policy that causes termination of some employees is not an amendment to an ERISA plan. Cf. Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Ry., 520 U.S. 510, 516 (1997) (noting that for ERISA purposes,

terminating employees is not equivalent to terminating benefits pursuant to a plan amendment). Accordingly, the Leave of Absence Policy is not void as an improper amendment, and Tirone lost his "employee" status on March 31, 2005.

B. Summary Plan Documents

Tirone further asserts that, notwithstanding the Policy, he is entitled to health care benefits because the SPD provides that "[h]eath care benefits continue for you and eligible family members for as long as you are totally disabled on the same terms and conditions." (MacDermeid Decl. I, Ex. E(2) at 9.) The parties dispute whether Tirone can base his claim on that language. The Court need not resolve this dispute because the SPD does not, in fact, provide lifetime healthcare coverage to totally disabled former employees.

The terms of an ERISA plan must be interpreted in accord with "general principles of contract law, looking to the language of the Plan and other indicia of the intent of the Plan's creator." Austin v. Ford, No. 95 Civ. 3730 (RWS), 1998 WL 88744, at *3 (S.D.N.Y. March 2, 1998) (internal citation omitted); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112-13 (1989); I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs. Council Ins. Trust Fund, 136 F.3d 114, 119-20 (2d Cir. 1998). The Plan, by its terms, is governed by New York law (MacDermeid Decl. I, Ex. A at 3), which provides:

> The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous . . . . [T]he meaning of a contract that is unambiguous is a question of law for the court to decide . . . . [T]he meaning of an ambiguous contract where there is [extrinsic] evidence is a question of fact for the factfinder.

Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000). "[A]n interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985).

9

The SPD unambiguously conditions the receipt of health care benefits on continued employment. Tirone's interpretation of the SPD as providing health care benefits to former employees for as long as they are totally disabled fails because it renders part of the SPD (and the Plan itself) "unreasonable or of no effect." <u>Rothenberg</u>, 755 F.2d at 1019. The SPD contains numerous provisions conditioning the receipt of benefits on continued employment. (MacDermeid Decl. I, Ex. E(2) at 10 ("[Y]ou, or covered family members, can lose your health coverage if[] [y]ou terminate your employment."); MacDermeid Decl. I, Ex. E(2) at 3 ("You are not eligible if you are [] designated by the Exchange . . . not as an employee."); MacDermeid Decl. I, Ex. E(2) at 5 ("[Y]ou . . . are eligible to receive unlimited lifetime benefits <u>while employed at the Exchange</u>.") (emphasis added).) Moreover, the SPD expressly addresses the termination of healthcare benefits for totally disabled former employees. Under the subheading "When Coverage Stops," the SPD provides that on termination, "if you or your family members are totally disabled, benefits will continue to be paid only for the disabling condition until recovery, up to 12 months."[4] (MacDermeid Decl. I, Ex. E(2) at 10.) Read as a whole, the SPD does not provide lifetime healthcare benefits to former employees who are totally disabled. Rather, it provides for the Limited Extended Benefits, i.e., limited healthcare benefits to these former employees for up to twelve months.

The EBPC's appeal decision does not expressly address the possibility of Limited Extended Benefits but notes that Tirone was "terminated back on January 24, 1990 when you commenced your leave of absence."[5] (Compl. ¶ 74.) Implicit in the EBPC's decision is its

---

[4] Similarly, the Plan provides that, in the event that a totally disabled employee is terminated, "[a] temporary extension of benefits, only for treatment of the condition causing Total Disability" until "(a) the date the Total Disability ceases; . . . or (c) 12 months from the date Coverage under the Policy would otherwise have terminated." (MacDermeid Decl. I, Ex. B at 16.)

[5] Tirone alleges that he began his leave on February 5, 1990. (Compl. ¶ 31.) The precise date is irrelevant.

10

conclusion that Tirone is not entitled to Limited Extended Benefits because more than twelve months elapsed since his "termination" on January 24, 1990. This interpretation of the SPD and the Plan documents renders some provisions superfluous and therefore cannot withstand review even under the deferential arbitrary and capricious standard. See Gallo v. Madera, 136 F.3d 326, 330-31 (2d Cir. 1998) ("[W]here the trustees of a plan . . . by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious.") (quoting Miles v. New York State Teamsters Conference, 698 F.2d 593, 599 (2d Cir. 1983)). As discussed above, the SPD (and the Plan documents) treats current and former employees on long-term disability leave differently. (Compare MacDermeid Decl. I, Ex. E(2) at 9 ("Heath care benefits continue for you and eligible family members for as long as you are totally disabled on the same terms and conditions."); with MacDermeid Decl. I, Ex. E(2) at 10 ("[On termination,] if you or your family members are totally disabled, benefits will continue to be paid only for the disabling condition until recovery, up to 12 months").) The EBPC's conclusion that Tirone was terminated because he went on long-term disability leave renders superfluous any distinction between the two categories. Thus, Tirone could not have been "terminated" for the purpose of calculating the term of the Limited Extended Benefits because he went on long-term disability leave. Indeed, he was terminated only when he was unable to return to work on March 31, 2005 pursuant to the Leave of Absence Policy. Tirone therefore is entitled to Limited Extended Benefits through March 31, 2006.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Tirone's claim for relief under ERISA § 502 is denied, and Tirone's motion for summary judgment on the ERISA § 502 claim is granted in part and denied in part.

Dated: July 27, 2007
      New York, New York

SO ORDERED:

_____<br>
WILLIAM H. PAULEY III<br>
U.S.D.J.

*Counsel of record*:

Peter George Eikenberry, Esq.
Law Office of Peter G. Eikenberry
74 Trinity Place, Suite 1609
New York, NY 10006
*Counsel for Plaintiff*

Deirdre A. Grossman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
*Counsel for Defendants*